UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PAMELA JEAN HOPKINS, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 1:16-cv-116-WTL-MJD |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of the Social Security | ) |
| Administration,[1] | ) |
| | ) |
|    Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Pamela Jean Hopkins requests judicial review of the final decision of the Defendant, Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("Commissioner"), denying Hopkins' applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. The Court, having reviewed the record and the briefs of the parties, rules as follows.

### I.    APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill automatically became the Defendant in this case when she succeeded Carolyn Colvin as the Acting Commissioner of Social Security on January 23, 2017.

work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b).[2] At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to

---

[2] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to DIB sections only.

address every piece of evidence or testimony presented," he must "provide an accurate and logical bridge between the evidence and [his] conclusion that a claimant is not disabled." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). "If a decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, a remand is required." *Id.* (citation omitted).

## II.   BACKGROUND

Hopkins protectively filed for DIB and SSI on May 22, 2012, alleging that she became disabled on February 16, 2012, due to various medical conditions. Hopkins' application was denied initially on September 14, 2012, and upon reconsideration on January 7, 2013.

Thereafter, Hopkins requested and received a hearing before an Administrative Law Judge ("ALJ"). A video hearing, during which Hopkins was represented by counsel, was held by ALJ Mario G. Silva on September 3, 2014. An impartial vocational expert also appeared and testified at the hearing. Hopkins submitted post-hearing evidence regarding the duties of a school nurse as actually peformed by one of Hopkins' colleagues. The ALJ issued his decision denying Hopkins' claim on October 14, 2014. After the Appeals Council denied his request for review, Hopkins filed this timely appeal.

Hopkins was born on March 19, 1959. She graduated from high school and has two years of post-high school education. She was engaged in substantial gainful activity through May 2012; however, there was a continuous 12-month period during which she had not engaged in substantial gainful activity. She has past relevant work as a school nurse.

## III.   THE ALJ'S DECISION

At step one of the sequential evaluation, the ALJ determined that Hopkins had engaged in substantial gainful activity through May 2012, because she had not carried her burden of proof

showing that the two-month return to work after a six-week medical leave of absence was an unsuccessful work attempt. However, the ALJ determined that there had been a continuous 12-month period during which the claimant was not engaged in successful gainful activity. At steps two and three, the ALJ concluded the claimant suffered from the following severe impairments: chronic cervical pain syndrome status post remote multilevel cervical fusion, degenerative disc disease of the cervical spine with residual right sided radiculopathy, and brachial neuritis or radiculitis, but that her impairments, singly or in combination, did not meet or medically equal a listed impairment. At step four, the ALJ determined that Hopkins had the following Residual Functional Capacity ("RFC"):

> [T]he claimant can occasionally climb ramps and stairs, and she can occasionally balance, stoop, kneel and crouch, but she can never climb ladders, ropes or scaffolds, and she can never crawl. The claimant is further limited to no more than occasional rotation of the neck, from side to side, she can occasionally reach overhead bilaterally, and she can frequently reach in all other directions bilaterally, but she is unable to extend her bilateral upper extremity reach more than 18 inches from the body, and she is further limited to no more than occasional exposure to hazards such as dangerous moving machinery or unprotected heights, and no more than occasional exposure to vibration.

*Id.* The ALJ concluded Hopkins was able to perform her past relevant work as a school nurse. Accordingly, the ALJ concluded that Hopkins was not disabled as defined by the Act.

## IV.   EVIDENCE OF RECORD

The medical evidence of record is aptly set forth in Hopkins' brief (Dkt. No. 10) and need not be recited here.  Specific facts are set forth in the discussion section below where relevant.

## V.   DISCUSSION

In her brief in support of her complaint, Hopkins advances several objections to the ALJ's decision; each is addressed below.

### A. The ALJ's Finding that Hopkins Can Perform her Past Relevant Work

Hopkins argues that the ALJ erred in finding that she can perform her past relevant work as a school nurse. However, as a general matter, a claimant is not disabled if she maintains the RFC to perform her past relevant work either as he actually performed it *or* as it is generally performed in the national economy. SSR 82–61; *see also* 20 C.F.R, § 404.1560(b)(2). Here, the VE testified that a person with Hopkins' limitations could perform the job of school nurse both as Hopkins performed it and as it was generally performed. The testimony was reliable and provided substantial evidence for the ALJ's finding. *Donague v. Barnhart*, 279 F.3d 441 (7th Cir. 2002).

### B. Weight Given to Treating Physician

Hopkins also argues that the ALJ failed to give adequate weight to the opinion of treating physician Dr. Carolyn Kochert and failed to comply with all provisions of 20 C.F.R. § 404.1527 in evaluating the treating physician's opinion. An ALJ must give a treating physician's opinion controlling weight if it is both "(1) supported by medical findings; and (2) consistent with substantial evidence in the record." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (citing 20 C.F.R. § 404.1527(c)(2)). If the ALJ finds that the opinion is not entitled to controlling weight, the ALJ must still assess the proper weight to give to the opinion. *See id.* This requires consideration of several factors, including the "length, nature, and extent of the physician and claimant's treatment relationship, whether the physician supported his or her opinions with sufficient explanations, and whether the physician specializes in the medical conditions at issue." *Id.* (citations omitted). Hopkins contends the ALJ ignored these requirements by erroneously discounting the opinion of treating physician Dr. Kochert.

5

The ALJ "did not give significant weight" to the opinion of treating physician Dr. Kochert. Record at 30. As Hopkins argues, the ALJ never indicates what specific weight he gave to Dr. Kochert's opinion, nor did he indicate that he properly considered Dr. Kochert's role as a treating physician. *See Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (reversing ALJ's decision because, while the ALJ expressly articulated a reason for not giving a treating source opinion controlling weight, "the ALJ said nothing regarding [the] required checklist of factors"). This omission requires remand.

Further, on remand, the ALJ should carefully examine the record to ensure that any reasons he provides for not affording Dr. Kochert's opinion controlling weight are actually supported by the record. As Hopkins correctly argues, the ALJ appears to ignore evidence in the record that does not support his rationale for discounting Dr. Kochert's opinion. *See Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014) (explaining that the Seventh Circuit has "repeatedly forbidden" ALJs from cherry-picking only the medical evidence that supports their conclusion); *Moore v. Colvin*, 743 F.3d 1118, 1124 (7th Cir. 2014) ("The ALJ simply cannot recite only the evidence that is supportive of her ultimate conclusion without acknowledging and addressing the significant contrary evidence in the record."). A more thorough analysis is required on remand.

### C. Credibility

Hopkins also argues that the ALJ's credibility determination is inadequate. The Court agrees.

As the ALJ correctly acknowledged under the standard that applied at the time,[3] with regard to subjective symptoms such as pain, if a claimant has a medically determinable

---

[3] S.S.R. 96-7p has been superseded by S.S.R. 16-3p, which the agency explained "eliminate[d] the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this

6

impairment that is reasonably expected to produce pain, then the ALJ must evaluate the credibility of the claimant's testimony regarding the extent of that pain. "In determining credibility an ALJ must consider several factors, including the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, treatment, and limitations," *see* 20 C.F.R. § 404.1529(c); S.S.R. 96-7p, and justify the finding with specific reasons. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). The regulations further provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2). Additionally, because the ALJ evaluates credibility by questioning and observing a live witness, not simply a cold record, an ALJ's credibility determination is reviewed deferentially and should be overturned only if it is "patently wrong." *See Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). However, "[t]he determination of credibility must contain specific reasons for the credibility finding" and "must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Id.* (citing *Arnold v. Barnhart*, 473 F.3d 816, 822 (7th Cir. 2007)).

      The ALJ pointed to Hopkins' work history and effort to continue working as long as possible and noted that she worked for an additional five years following her last surgical procedure in 2007, seemingly to show that her allegations that she now cannot work are not credible. However, as the ALJ acknowledged, Hopkins changed jobs—from a registered nurse to a school nurse—because the physical demands of being a registered nurse were too great. The

---

term" and "clarif[ied] that subjective symptom evaluation is not an examination of an individual's character."

7

ALJ failed to heed the Seventh Circuit's admonition that a "claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015) (quotation and citation omitted).

Further, although the ALJ finds that the record does not show any appreciable difference in Hopkins' symptoms or treatments such that she would no longer be able to work, in fact, the record does contain such evidence. Specifically, in January and February of 2012, Hopkins informed Dr. Kochert that her pain level was "getting high some days" and "moderately limits activities." R. at 380, 359 ("Patient didn't feel like she saw any improvement from tx . . . Tearful due to persistent pain."). Further, in March of 2012, Dr. Kochert documented that "her lifestyle changes [were] hard to deal with." *Id.* at 333. Dr. Kochert increased Hopkins' dosage of oxycodone and prescribed HCG injections

The ALJ also pointed to Hopkins' daily activities in rejecting her allegations and finding that she has no mental limitations or limitations in using her right upper extremity. He pointed to the fact that she sometimes watches her grandchild, performs personal care without support, prepares simple meals, does laundry, and shops. He noted her husband's report that she was independent in self-care, did laundry once a week, shopped in stores, and paid her bills. However, the ALJ did not address Hopkins' reports that she has trouble with sitting, completing tasks, concentrating, using her hands, and getting along with others. He also did not address her reports that she was unable to concentrate at all on a bad day and that she had hired a housecleaner because it caused her pain to scrub. Moreover, he did not mention Hopkins' testimony that she had to lay down throughout the course of each day. As the Seventh Circuit has explained, "[t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help

8

from other persons . . . and is not held to a minimum standard of performance, as [he] would be by an employer." *Hughes v. Astrue*, 705 F.3d 276, 278-279 (7th Cir. 2013) (citations omitted).

The ALJ also points to a supposed lack of significant clinical findings over repeated exams to reject Hopkins' allegation of disabling pain. However, the "ALJ simply cannot recite only the evidence that is supportive of [his] ultimate conclusion without acknowledging and addressing the significant contrary evidence in the record." *Moore*, 743 F.3d at 1124. Here, the record is replete with evidence regarding Hopkins' allegations of severe and disabling neck pain. The ALJ fails to mention the evidence of cord impingement and severe foraminal stenosis and pinched nerve from severe stenosis and Hopkins' distress on examination. Nor does he mention the evidence of muscle spasms, decreased range of motion, and tenderness in her cervical spine. These failures should be corrected on remand.

The ALJ's credibility determination is based, at least in part, on assumptions and inferences that are not entirely supported by the record. Remand is required to permit the ALJ to remedy these errors and make a credibility determination in accordance with SSR 16-3p that is wholly supported by the record.

## VI.   CONCLUSION

For the reasons set forth above, the decision of the Commissioner is **REVERSED AND REMANDED** for further proceedings consistent with this Entry.

**SO ORDERED: 3/23/17**

_William T Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.

9